# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SARAH GOSVENER,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 24-2578-JAR-TJJ** |
| **DOUG TULINO, in his official capacity as Acting Postmaster General of the United States,** | |
| **Defendant.** | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Sarah Gosvener[1] brings this action against her employer, Doug Tulino, in his official capacity as Acting Postmaster General of the United States, alleging claims of hostile work environment, discrimination, and retaliation on the basis of sex under Title VII of the Civil Rights Act of 1964.  Before the Court is Defendant's Motion to Dismiss or Summary Judgment (Doc. 8).  The motion is fully briefed and the Court is prepared to rule.  For the reasons explained below, the Court grants Defendant's motion to dismiss for failure to state a claim.

## I.      Standard

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or in the alternative, for summary judgment under Rule 56.  Under Rule 12(d), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

---

[1] Plaintiff's last name is spelled "Gosvenor" in the original Complaint, and thus, on the Court's docket sheet.  Doc. 1.  It is spelled "Gosvener" in the Amended Complaint and in all subsequent filings.  *See, e.g.*, Docs. 4, 14.  It is also spelled "Gosvener" in the administrative filings Plaintiff herself completed.  *See, e.g.*, Doc. 9-2. Therefore, the Court uses this spelling throughout this Memorandum and Order.

Although "[t]he 'usual rule' is 'that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss,' . . . 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[2]  Here, Defendant presents several exhibits that are outside the pleadings in support of its motion.  Not all of them are necessary to resolve this motion, however.  The Court considers the administrative charge documents attached to Defendant's motion to dismiss that are referred to in the Amended Complaint.[3]  These documents are referred to in the Amended Complaint, they are central to the claims, and Plaintiff does not dispute their authenticity.  The Court declines to consider the other exhibits attached to Defendant's motion.

The Court therefore proceeds under the standard that applies to a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6): a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[4] and must include "enough facts to state a claim for relief that is plausible on its face."[5]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[6]

The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but it requires more than "a sheer possibility."[7]  "[M]ere 'labels and

---

[2] *Waller v. City & Cnty. of Denv.*, 932 F.3d 1277, 1282 (10th Cir. 2019) (alteration omitted) (first quoting *Alvarado v. KOB-TV, LLC*, 493 F.3d 1201, 1215 (10th Cir. 2007); and then quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[3] Docs. 9-2, 9-7, 9-8, 9-9.

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[5] *Id*. at 570.

[6] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[8]  Finally, the Court must accept the plaintiff's factual allegations as true, view those facts in the light most favorable to the plaintiff, and assess whether they give rise to a reasonable inference that the defendant is liable in light of the applicable law.[9]

## II.    Factual Background

The following facts, assumed to be true and viewed in the light most favorable to Plaintiff, are included either in the administrative charging documents or the Amended Complaint.

Plaintiff is employed by the United States Postal Service ("USPS") as a Clerk in Kansas City, Kansas.  She filed an informal complaint on July 19, 2023, alleging transgender discrimination based on disability and sex.  That matter was closed on September 20, 2023.

On October 11, 2023, Plaintiff participated in an investigative interview and Supervisor of Customer Services ("SCS") Jonnae Stevenson told Plaintiff she was under investigation for missing money from the Edwardsville Post Office that day.  Manager of Customer Service ("MCS") Marilyn Edwards was also present; she was part of the previous Equal Opportunity Office ("EEO") complaint, but did not recuse herself from this investigation.

On November 17, 2023, Plaintiff had a surgical procedure.  She returned to work on November 24, 2023, with lifting restrictions requiring light duty.  During the month of December, Plaintiff worked at the Edwardsville station.  Plaintiff alleges this was outside of her

---

[8] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[9] *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

work restrictions because it required her to work alone; no other employee would be there to perform the heavy lifting required.

During the month of December, "Edwards . . . removed Plaintiff from her scheduled work on Saturdays instead of assigning Plaintiff other light work as required by Plaintiff's accommodation for her medical restrictions."[10]

On December 4, 2023, Plaintiff submitted a request for leave under the Family and Medical Leave Act ("FMLA") for December 8, 2023.  Edwards initially denied the request, but Plaintiff went to the Postmaster and obtained approval.  When Plaintiff raised concerns about working outside her restrictions, Edwards and/or Stevenson responded that they did not have to schedule her at all.

On December 27, 2023, Edwards sent Plaintiff to work at the Edwardsville Post Office after she reported to work at the Wyandotte West main office.

On January 4, 2024, Plaintiff was denied a request to have a signing witness of her choice.

On January 16, 2024, management disclosed Plaintiff's medical information to another employee.  When Plaintiff confronted Edwards about the disclosure, Edwards brought the coworker into the conversation and berated Plaintiff about her clock-in time, despite Plaintiff following the clock-in directions of another MCS.

---

[10] Doc. 4 ¶ 37.  Defendant submitted evidence in support of its motion showing that Plaintiff in fact was scheduled to work on Saturdays, but she opted to take sick leave for part of each Saturday in December.  The Court does not consider this evidence because it constitutes matters outside the pleadings.  In the response brief, Plaintiff asserts that "[a]fter Edwards refused to observe Plaintiff's medical limitations and removed her from the Saturday schedule in December, Plaintiff worked limited hours in combination with accrued leave in an effort to accommodate her own medical limitations."  Doc. 14 at 3 ¶ 8.  She cites paragraphs 36–37 of the Amended Complaint for this assertion, but the pleading does not support this fact.  Paragraph 36 does not reference her Saturday schedule, and the Court quotes from paragraph 37 in the text above.

On March 15, 2024, Plaintiff participated in training.  Plaintiff does not believe any other employee participated in this training.

Stevenson initiated an investigative interview with Plaintiff on March 18, 2024, related to excessive absences.  Plaintiff believes that other employees who used more sick days during the same time period were not investigated.  That same day, Plaintiff was permanently reassigned to the Edwardsville Post Office.

On March 25, 2024, Edwards alleged Plaintiff was wearing inappropriate footwear in the work room; Plaintiff had just clocked out and was wearing her civilian clothing.

On April 10, 2024, management told Plaintiff she was not being singled out.  Plaintiff alleges this occurred in front of customers and co-workers.

On April 18, 2024, Edwards accused Plaintiff of being rude to customers.  She often accused Plaintiff of misconduct and attributed the misconduct of others to Plaintiff.

On April 19, 2024, management posted a sign on the door of the Edwardsville and Muncie Post Office stations, informing patrons that if they had concerns, they could call management.

Plaintiff initiated contact with the EEO Office on February 4, 2024.  Her formal EEO complaint was received on March 25, 2024.[11]  Plaintiff marked "Sex (LGBT)" on the EEO complaint in the section for "Type of Discrimination."  She did not mark "Retaliation."  She provided a lengthy list of events and dates on which the alleged discrimination occurred:

- September 26, 2023:  Plaintiff was told that she could not use FMLA for court appearances for her name change.

---

[11] Doc. 9-7.

- October 11, 2023: Plaintiff participated in an investigative interview for missing money.

- November 17, 2023: Plaintiff had surgery. Plaintiff was forced to work outside of her restrictions after surgery.

- December 2, 2023; Plaintiff was "forced off" her schedule because she could not do parcel distribution and management did not find alternative work hours. An FMLA form was denied and Edwards refused to discuss it with Plaintiff.

- December 5, 2023: Plaintiff spoke to Edwards about working alone, which caused her to violate work restrictions.

- December 9, 2023: management failed to find an alternative to Saturdays for Plaintiff's hours, causing her to use paid leave.

- December 27, 2023: Plaintiff was directed to work alone at the Edwardsville Post Office.

- January 2024: management refused to allow Plaintiff to use the designated witness she preferred to sign an envelope that would give them access to Plaintiff's money drawer and online accounts.

- January 16, 2024: management disclosed Plaintiff's medical information to another employee. After Plaintiff confronted her supervisor with the issue, she the other employee was brought into the conversation.

- January 17, 2024: Plaintiff worked at the Civic Center Post Office and was counseled by management that she clocked in at the wrong station.

- March 25, 2024: Plaintiff was counseled for wearing inappropriate shoes on the workroom floor.

On April 19, 2024, Plaintiff amended her EEO complaint to add the following:

- April 10, 2024: Plaintiff's supervisor made a comment that Plaintiff believed disclosed her EEO activity.

- April 18, 2024: Plaintiff was accused of being rude to a customer.

- April 19, 2024: Plaintiff's supervisor placed a note on the doors of Edwardsville and Muncie stations requesting patrons contact management if they have any concerns.

On July 12, 2024, Plaintiff was notified that the EEO Office had completed its investigation and that she had the right to request a hearing before an administrative judge or, alternatively, a right to a Final Agency Determination ("FAD").  On July 26, 2024, she requested a FAD.  Plaintiff received a notice of the FAD and her right to sue on September 16, 2024.

## III.    Discussion

Defendant moves to dismiss based on failure to exhaust administrative remedies and on the merits.  The Court considers Defendant's failure-to-exhaust affirmative defense before proceeding to the merits.

### A.    Exhaustion

Title VII requires a plaintiff employed by the federal government to exhaust her administrative remedies by filing an administrative charge.[12]  Federal employees such as Plaintiff must comply with "specific administrative complaint procedures in order to exhaust their administrative remedies," which are set forth in Part 1614 of Chapter 29 of the Code of Federal Regulations.[13]  Under 29 C.F.R. § 1614.105(a), "[a]n aggrieved person must initiate contact with

---

[12] 42 U.S.C. § 2000e-16.

[13] *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (quoting *Showalter v. Weinstein*, 233 F. App'x 803, 804 (10th Cir. 2007)).

a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case

of personnel action, within 45 days of the effective date of the action."  A plaintiff's failure to

exhaust administrative remedies is no longer a jurisdictional bar to suit, but instead "merely

permits the employer to raise an affirmative defense."[14]

Here, Defendant argues that Plaintiff only exhausted her discrete claims of discrimination

and retaliation that occurred on or after November 6, 2023—45 days before she initiated contact

with her EEO counselor on February 4, 2024.  Thus, to the extent Plaintiff alleges a discrete act

of discrimination when her managers interviewed her on October 11, 2023, Defendant argues

that claim was not timely exhausted.

The Court agrees with Defendant that on the face of the Amended Complaint, any

discrete claim based on the October 11, 2023 interview was not exhausted.  Without addressing

any particular claim, Plaintiff generally argues in the response brief that the continuing violation

doctrine applies.  But the extent to which Plaintiff has exhausted her claims depends on whether

they are construed as discrete discriminatory and retaliatory acts, or instead part of her hostile

work environment claim.  The United States Supreme Court has explained that discrete

discriminatory and retaliatory acts "such as termination, failure to promote, denial of transfer, or

refusal to hire are easy to identify."[15]  This type of "discrete retaliatory or discriminatory act

'occur[s]' on the day that it 'happen[s],'" and "discrete discriminatory acts are not actionable if

---

[14] *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

[15] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

time barred, even when they are related to acts alleged in timely filed charges."[16]  Hostile work environment claims are different because they inherently involve repeated conduct.[17]

Defendant does not assert that Plaintiff failed to exhaust her hostile work environment claim and the Court finds that under the precedent cited above, that claim has been exhausted. The Court can consider the October 11, 2023 interview as part of that claim.  But Defendant is correct that any discrete employment action that occurred before November 6, 2023, was not administratively exhausted.  Thus, Defendant's motion to dismiss any discrete discrimination and retaliation claim that occurred before November 6, 2023, is granted.  The Court proceeds to consider Defendant's motion to dismiss on the merits of the remaining claims below.

### B.    Discrimination Claims

Discrimination claims under Title VII can either be proved by direct evidence of discrimination, or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*.[18]  Direct evidence of discrimination includes "[s]tatements showing 'an existing policy which itself constitutes discrimination.'"[19]  But statements that require an inferential step that discrimination was the motivating cause of the action "are at most circumstantial evidence of discriminatory intent."[20]  When a plaintiff relies on circumstantial evidence to prove discrimination, the *McDonnell Douglas* burden-shifting framework does not create the pleading

---

[16] *Id.* at 110, 113; *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1178 (10th Cir. 2011) (explaining that the Supreme Court's ruling in *Morgan* does not alter the rule that discrete acts of discrimination "trigger the statute of limitations when announced to the claimant" (quoting *Morgan*, 536 U.S. at 114)).

[17] *Morgan*, 536 U.S. at 115, 117 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

[18] 411 U.S. 792 (1973).

[19] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137 (10th Cir. 2024) (quoting *Heim v. Utah*, 8 F.3d 1541, 1546 (10th Cir. 1993)).

[20] *Id.* (quoting *EEOC v. Wiltel, Inc.*, 81 F.3d 1508, 1514 (10th Cir. 1996)).

standard.[21]  Instead, at the motion-to-dismiss stage, the Court considers the first step of

*McDonnell Douglas*—whether Plaintiff has alleged a prima facie case of discrimination.[22]

Although "the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her

complaint, the elements of each alleged cause of action help to determine whether Plaintiff has

set forth a plausible claim."[23]

Generally, an employment discrimination plaintiff may establish a prima facie case of

discrimination under Title VII by demonstrating: (1) membership in protected class; (2) an

adverse employment action; and (3) the adverse employment action occurred under

circumstances giving rise to an inference of discrimination.[24]  While Plaintiff is not required to

plead "any specific facts in particular" to nudge her claim from possible to plausible, "[t]he

critical prima facie inquiry in all [discrimination] cases is whether the plaintiff has [alleged] that

[an] adverse employment action occurred under circumstances which give rise to an inference of

unlawful discrimination."[25]  Defendant moves to dismiss on the basis that Plaintiff failed to

allege an actionable employment action.

In considering the second element of the prima facie case, Defendants asks the Court to

require Plaintiff, as a federal sector employee, to show that she suffered a "personnel action"

rather than an "adverse employment action," as private employees must show.  Defendant relies

on *Babb v. Wilkie*, a 2020 Supreme Court decision that considered the appropriate causation

---

[21] *Id.*

[22] *Id.* at 1139.

[23] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[24] *McNellis*, 116 F.4th at 1139 (discussing how elements of prima facie case in discrimination cases vary depending on context but that this is the general formulation); *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 n.1 (10th Cir. 2015) (acknowledging that the Tenth Circuit has used different versions of the prima facie test, but stating that it has "express[ed] a preference for more concise formulations." (citations omitted)).

[25] *McNellis*, 116 F.4th at 1139 (second and third alterations in original) (quoting *Barlow v. C.R. Eng., Inc.*, 703 F.3d 497, 505 (10th Cir. 2012)).

standard for federal-sector claims under the Age Discrimination in Employment Act
("ADEA").[26]  In that case, the Court referenced the ADEA federal-sector provision, which states
that "'personnel actions' affecting individuals aged 40 and older 'shall be made free from any
discrimination based on age.'"[27]  The Court stated that "personnel actions" under the ADEA is
not defined, but is consistent with the definition provided under the Civil Service Reform Act of
1978: "most employment-related decisions, such as appointment, promotion, work assignment,
compensation, and performance reviews."[28]  The Court then proceeded to hold that a federal-
sector ADEA plaintiff need not show that age was the but-for cause of the personnel action to
demonstrate age discrimination.[29]  Defendant urges that Plaintiff here must demonstrate a
"personnel decision" because Title VII's federal-sector provision uses the same language as the
ADEA.[30]  Plaintiff does not address this argument.

As Defendant recognizes, the Supreme Court's reference to the "personnel action"
requirement is dicta in *Babb*, and after that case was decided the Tenth Circuit continued to
apply the "adverse employment action" formulation to the second element of federal-sector
discrimination claims.[31]  This Court declines to deviate from this authority absent a binding
directive from the Supreme Court or the Tenth Circuit.  Thus, the Court considers whether
Plaintiff alleges facts to support an adverse employment action.

---

[26] 589 U.S. 399 (2020).

[27] *Id.* at 402 (quoting 29 U.S.C. § 633a(a)).

[28] *Id.* at 405 (citing 5 U.S.C. § 2302(a)(2)(A)).

[29] *Id.* at 413.

[30] *See* 42 U.S.C. § 2000e-16(a) ("All personnel actions affecting employees or applicants for employment
(except with regard to aliens employed outside the limits of the United States) . . . in the United States Postal Service
. . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.").

[31] *See Mauldin v. Driscoll*, 136 F.4th 984, 996 (10th Cir. 2025); *Nelson v. DeJoy*, No. 23-1227, 2024 WL
3507723, at *4–5 (10th Cir. July 23, 2024).

The Supreme Court recently clarified that a plaintiff demonstrates an adverse employment action if she experienced "some harm respecting an identifiable term or condition of employment" as a result of that action.[32]  The Court explained that the employer's action "must have left [the plaintiff] worse off, but need not have left her significantly so."[33]  Defendant urges the Court not to apply this standard here because it only applies to private-sector discrimination cases.  But, as the Court explained above, even after *Babb*, the Tenth Circuit has applied the adverse-employment-action element of the prima facie case to public-sector employment discrimination claims.  The Court declines to apply a different formulation here without clear guidance from the Tenth Circuit or Supreme Court.  Thus, the Court applies the holding in *Muldrow*.

Plaintiff alleges a litany of dates and events in her Amended Complaint, but she does not state which events pertain to which claims.  Her response to the motion to dismiss does not add any clarity.  She addresses only one adverse employment action in her response: that in December 2023, she was required to work on Saturdays alone, which forced her to use her sick leave to mitigate the impact of those work requirements on her health.  The problem with this claim is that it is not alleged in the Amended Complaint, which instead states that she was "removed . . . from her scheduled work on Saturdays instead of assigning Plaintiff other light work."[34]  The Amended Complaint and response are therefore at odds, and Plaintiff cannot amend her pleading by alleging different facts in the response.[35]  The Court must assume as true the allegations in the Amended Complaint on a motion to dismiss.  Because Plaintiff fails to

---

[32] *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024).

[33] *Id.* at 359.

[34] Doc. 4 ¶ 37.

[35] *See Larson v. Safeguard Props., Inc.*, 379 F. Supp. 2d 1149, 1152 (D. Kan. 2005).

allege facts upon which the Court may infer that removing her from the Saturday schedule caused some harm to an identifiable condition of her employment, the Court grants the motion to dismiss based on the Saturday scheduling allegations.

Plaintiff fails to address any of the other employment actions she recites in the Amended Complaint in response to the motion to dismiss. Because she failed to do so, she has waived the right to respond.[36] The Court therefore grants Defendant's motion to dismiss the remaining grounds for her discrimination claims for failure to allege adverse employment actions.

### B.    Retaliation and Hostile Work Environment Claims

Defendant moves to dismiss the remaining claims of retaliation and hostile work environment for failure to state a claim upon which relief can be granted. Plaintiff wholly failed to address either claim in her response brief. Under District of Kansas Rule 7.1, if a party does not timely respond to a motion to dismiss, the Court ordinarily will grant the motion as uncontested without further notice.[37] Likewise, when a party fails to respond to a substantive argument raised by a motion to dismiss, it is deemed waived or abandoned.[38] Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's claims for retaliation and hostile work environment.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss or Summary Judgment (Doc. 8) is **granted**. The Court dismisses Plaintiff's Amended

---

[36] *C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022) (finding the district court correctly dismissed plaintiff's claim because he did not address it in response to defendants' motion to dismiss); *Brown v. Nationwide Ins.*, No. 21-4122, 2023 WL 4174064, at *8–9 (10th Cir. June 26, 2023) (finding district court properly concluded that plaintiff abandoned her claim by ignoring arguments on that claim in the response to the motion to dismiss); *Lancaster v. Sprint/United Mgmt. Co.*, 670 F. App'x 984, 984–85 (10th Cir. 2016) (finding the plaintiff waived her retaliation claim because she did not respond to defendant's summary judgment argument); *Jackson v. United States*, No. 22-CV-02357-KHV, 2023 WL 2631528, at *5 (D. Kan. Mar. 24, 2023) (finding argument waived when not addressed in reply).

[37] *See* D. Kan. R. 7.1(c).

[38] *See supra* note 36.

Complaint for failure to state a claim upon which relief can be granted.  The Clerk is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

Dated: November 14, 2025

                                                              S/ Julie A. Robinson
                                                              JULIE A. ROBINSON
                                                              UNITED STATES DISTRICT JUDGE